UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MUFID AHMAD MUSTAFA,

      Petitioner,

v.                                                                No. 1:26-CV-083-H

MARKWAYNE MULLIN, et al.,

      Respondents.

## ORDER

Before the Court is Mufid Ahmad Mustafa's petition for a writ of habeas corpus. Dkt. No. 1. Mustafa, a Jordanian citizen born in the West Bank, alleges that his continued post-removal-order detention violates the Fifth Amendment's Due Process Clause under *Zadvydas v. Davis*, 533 U.S. 678 (2001). He also alleges that the respondents re-detained him in violation of applicable procedural regulations. *See* 8 C.F.R. § 241.13.

Each claim fails. Mustafa has not shown that there is no significant likelihood of removal in the reasonably foreseeable future. And on his procedural claim, Mustafa fails to demonstrate that he would be entitled to habeas relief even if the respondents violated the applicable regulations for re-detaining him. Thus, the petition (Dkt. No. 1) is denied.

## 1. Background

Mustafa was born in the West Bank and is a Jordanian citizen. Dkt. Nos. 1 ¶ 25; 10 at 6. He has lived in the United States since 1974, when he adjusted his status to that of a lawful permanent resident. Dkt. No. 1 ¶ 25. But decades after his arrival, Mustafa was convicted of a drug offense and sentenced to 78 months in prison. Dkt. No. 10 at 6.

After serving his sentence, Mustafa was ordered removed to Jordan in 2002. *Id.* at 10. At that time, he was detained by U.S. Immigration and Customs Enforcement. *Id.* at 6.

About five months later, ICE released Mustafa on an Order of Supervision after attempts to remove him were unsuccessful. Dkt. No. 1 ¶ 27. He has remained in the country since.

On January 2, 2026, ICE re-detained Mustafa. Dkt. No. 10 at 6. He was served with a Notice of Revocation Release informing him that his Order of Supervision "ha[d] been revoked" and that ICE had determined that he could be "expeditiously removed from the United States" under the outstanding removal order. *Id.* at 10. The Notice further informed Mustafa that his "case is under current review by Jordan for the issuance of a travel document" and that he was to remain in custody under federal regulations. *Id.* He is currently detained at the Bluebonnet Detention Facility in Anson, Texas. Dkt. No. 1 ¶ 11.

On February 23, 2026, Mustafa petitioned for a writ of habeas corpus in this Court. *See* Dkt. No. 1. He argues that his continued detention violates due process because his removal is not significantly likely in the reasonably foreseeable future. *Id.* ¶ 57. And he claims that the respondents revoked his Order of Supervision and re-detained him without complying with 8 C.F.R. § 241.13, which sets out various procedural requirements. *Id.* ¶ 42.

The Court ordered a response to the petition (Dkt. No. 4), which the respondents provided (Dkt. No. 9). Mustafa replied. Dkt. No. 11. The petition is ripe for review.

## 2.     Legal Standards

### A.     Writ of Habeas Corpus

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas*, 533 U.S. at 687–88. Habeas exists solely to "grant relief from unlawful imprisonment or custody."

*Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

    **B.**    **Immigration Detention Under 8 U.S.C. § 1231**

Ordinarily, the government must remove an alien within 90 days of a final order of removal.  8 U.S.C. § 1231(a)(1)(A).  During this "removal period," the government "shall detain" the alien.  *Id.* § 1231(a)(2)(A).  If the alien does not leave the country or is not removed within the removal period, the alien is "subject to supervision."  *Id.* § 1231(a)(3).  But under Section 1231(a)(6), the government "may" continue to detain certain aliens beyond the removal period if they are (1) inadmissible, (2) removable because of certain violations, or (3) are a risk to the community or unlikely to comply with the removal order.

By its terms, Section 1231(a)(6) does not impose any time limit on an alien's post-removal-period detention.  Faced with "constitutional concerns" about indefinite detention, the Supreme Court in *Zadvydas* addressed how long the government may detain an alien under Section 1231(a)(6) while their removal is pending.  533 U.S. at 682.  The petitioners—two resident aliens with criminal histories—were detained under Section 1231 after receiving final removal orders.  *Id.* at 684–86.  In both instances the government continued to detain the petitioners past the 90-day removal period.  *Id.*  The petitioners each filed a habeas petition claiming that their continued detention violated due process.  *Id.*

The Supreme Court first noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  *Id.* at 690.  To avoid these concerns,

the *Zadvydas* Court construed Section 1231(a)(6) to permit detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id.* at 699, and the alien is "eligible for conditional release" on an Order of Supervision. *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

Courts measure reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. They must also consider the Executive Branch's immigration expertise, "the serious administrative needs and concerns inherent in the necessarily extensive" efforts to enforce Section 1231, and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized in *Zadvydas* a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once the alien has satisfied his burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Accordingly, while not every non-removed alien must be released after six months, the parties' relative burdens may change as the duration of an alien's post-removal-period detention stretches on. *See id.*

3.      **Analysis**

Mustafa has not demonstrated entitlement to habeas relief.  He has not shown that there is no significant likelihood of removal in the reasonably foreseeable future.  Moreover, any procedural error was harmless and, in any event, cannot be corrected through a habeas petition.  For those reasons, the Court denies the petition.

A.      **Mustafa's detention is lawful under *Zadvydas*.**

Because Mustafa was re-detained on January 2, 2026, his detention is just beyond *Zadvydas*'s presumptively reasonable six-month window.  *See* Dkt. No. 10 at 6.  Still, Mustafa has not shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  The respondents offer a sworn declaration from an ICE Deportation Officer indicating that they are "pursuing the removal of [Mustafa] to Jordan as the country designated in the removal order and the country of citizenship."  Dkt. No. 10 at 7.  The government, according to the declaration, is "actively removing Jordanian nationals to Jordan" and has had "one other removal this year of a person born in Israel but a citizen of Jordan." *Id.*  Accordingly, Mustafa has not met his burden of demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future.

B.      **Any procedural violations in revoking Mustafa's Order of Supervision and re-detaining him were harmless and cannot be corrected with habeas relief.**

Next, Mustafa alleges that the respondents violated the Administrative Procedure Act, the Immigration and Nationality Act, and the INA's implementing regulations by revoking his Order of Supervision and re-detaining him without "the process mandated by [the government's] own regulations."  Dkt. No. 1 ¶ 65.  Specifically, he contends that "the government's policy or practice has been to summarily revoke orders of supervision and re-

– 5 –

detain non-citizens before any effort to determine whether removal is practicable, let alone likely," thus violating federal regulations. *Id.* ¶ 42.

But even if the respondents did not follow the necessary procedural requirements, any error was harmless. Harmless error applies in immigration cases generally. *Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted). The same is true for an agency's procedural violations. *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012). Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

The facts here are materially similar to a recent decision of this Court, *Nguyen v. Noem*, 797 F. Supp. 3d 651 (N.D. Tex. 2025). There, the petitioner challenged his detention process as a violation of Section 241.13(i)(3), which governs revocation of an Order of Supervision. Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances." *Id.* at 663. Here, as in that case, Mustafa has had the opportunity to obtain counsel, to make a full argument to a federal court regarding his detention, submit evidence, and respond to the respondents' arguments. *See id.*; *see also* Dkt. Nos. 1–2; 9–11. As a result, Mustafa "has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion" that he should be re-detained. *Nguyen*, 797 F. Supp. 3d at 663. Because Mustafa has received more than full notice and an opportunity to be heard, even if the respondents failed to conform to the relevant procedural regulations,

any error is now harmless given the procedures afforded in this case. There is no basis, on these grounds, for ordering Mustafa's immediate release.

Still more, assuming any error were harmful, habeas relief would not be the appropriate remedy. Writs of habeas corpus "[are] available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). The Fifth Circuit has confirmed in other contexts that the failure of officials "to follow their own policies, without more, does not constitute a violation of due process," making a writ of habeas corpus generally not available. *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)). Here, Mustafa fails to explain how the respondents' alleged procedural errors render his continued detention itself unlawful. For that reason, too, Mustafa's APA and INA claims fail.

**4.      Conclusion**

For these reasons, Mustafa has not shown that his continued detention violates due process or that the respondents' efforts to re-detain him were unlawful. Thus, the petition (Dkt. No. 1) is denied.

So ordered on July 15, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

– 7 –